## SMITH *vs.* BARKER & *al.*

*Partnership debts* must be paid out of the *partnership funds*, before creditors of the *individual members* of the company can be permitted to appropriate any part of those funds in payment of their demands.

The fact of *issue being joined* in an action pending, will not *per se* prevent the defendant's being summoned as the trustee of the plaintiff in a process of foreign attachment. He should, however, have an opportunity in the first suit of availing himself of the commencement and pendency of the trustee suit.

THIS was an action of assumpsit founded on a receipt given to the plaintiff, as a deputy sheriff, for property attached. The receipt, dated *July* 24, 1826, was for 215 pine board logs of the value of $860, and which were stated in the receipt to have been attached by virtue of a writ against *James Babcock & Co.* in favour of *John* and *Amos M. Roberts.*

It appeared in evidence that, on the 8*th of June*, the logs receipted for by the defendants, were attached by the plaintiff, at the suit of *John Roberts* against *Babcock & Co.*, in which judgment was rendered at the *June* term, 1827, of the Supreme Judicial Court for $356,60. This sum was paid by the defendants, and the execution was discharged.

On the same 8*th of June*, the same property was attached by the plaintiff on a writ in favour of *Amos M. Roberts* against *the same defendants*, on which, judgment was rendered for $68,60. And this also was paid and satisfied by the defendants.

At the time of said attachment, the same property, it also appeared, was *returned* by the plaintiff as attached on three other writs, all in favour of *John Roberts*. The first against

*Babcock & Johnson* — the second against *Babcock* alone — and the third against *Johnson* alone.

It seemed, that the partnership originally formed, was between *James Babcock*, *Henry Johnson* and *James Hobson*; — but prior to the making of the attachments, *James Babcock* had agreed to permit *Moses Babcock* to be equally interested with himself in the profits of the partnership business, which was lumbering.

The three last mentioned suits were also pursued to final judgment, and within thirty days therefrom, the plaintiff demanded of the defendants on the executions, the property described in their receipt, but it was not delivered to him.

It appeared that, at the time when the above attachments were made, *Babcock & Co.* were, and had ever since continued to be *insolvent*.

On the 13*th of June*, 1826, an agreement was entered into relative to the logs attached, between *Barker & Crosby*, the defendants, of one part, *James Babcock*, *Moses Babcock*, *Henry Johnson*, and *James Hobson*, of the second part, and *Benjamin Smith*, the plaintiff, of the third part, the material part of which was as follows, *viz.* — " Whereas the said *Smith*, on the " 12*th of June* instant, had in his hands a writ" " in which " the said *Barker & Crosby* were plaintiffs, and the said *Moses* " *Babcock & Co.* were defendants, and in which was demanded " a balance of book account — and whereas said *Smith* on said " 12*th of June*, attached on said writ a large quantity of logs now " lying in the waters of the *Penobscot* and its branches — It is " hereby agreed by the parties of the first and second parts, " that the said *Barker & Crosby* may receive said logs of said " officer, and take all proper and necessary measures to get " them to a mill, and to convert them into boards, as soon as " practicable, or into lumber of some sort, and the same to get " to market and sell as soon, and on as good terms as practica- " ble ; and the proceeds of the said lumber, when sold, the said " *Barker & Crosby* are to apply to the payment of any or all " demands they may have against and justly due from said par- " ties of the second part, or all, *any or either of them*, deduct- " ing expenses," &c.   " And the said *Smith* is hereby author-

Smith *v.* Barker & al

" ised to deliver said logs to said *Barker & Crosby* in confor-
" mity with said agreement."

It also appeared that after the commencement of this suit,
and after *issue joined therein* in this Court, the defendants were
summoned as the trustees of the firm of *Babcock & Co.* in a
process of foreign attachment, sued out by one *Isaac Smith.*
By the disclosure in that case, which was referred to so far as it
was competent, and by other evidence, it appeared that, after
the defendants had paid the two judgments aforesaid, recovered
by the *Roberts's*, the residue of the property attached was more
than sufficient to pay the demands which the defendants had
against the firm of *Babcock & Co.* by the sum of $125 — but
that they had demands against the *members of the firm, individ-
ually*, more than sufficient to absorb this residuum. — The trus-
tee suit was still pending in this Court.

A verdict was returned for the plaintiff for $161,87, being the
$125 aforesaid, and interest thereon, subject to the opinion of
the Court upon the questions raised. If in the opinion of the
Court, from the evidence, the defendants had no right to retain
any part of the property in question, the verdict was to be amend-
ed so as to stand for $435, with interest from *Nov.* 26, 1827. If
their opinion should be, that the defendants had a right to retain
for their demands against *Babcock & Co.* and not for their de-
mands against the individual members of that firm, and that
they derived no protection or defence from the trustee process,
so far as the same may be competent evidence, the verdict was
to stand as returned. But if upon the whole case, the Court
should be of opinion that the action was not maintained, the
verdict was to be set aside, and the plaintiff to become nonsuit.

*Starrett*, for the defendants.

The defendants have paid all the judgments to which the re-
ceipt, in the terms of it, can be made to apply, and therefore
should not be held in this action.

They had an unquestionable claim on the whole amount in
their hands, except the $125 — and for this sum they are not
liable in this action, because the property did not belong to the
persons against whom the judgments were. The property was

*partnership* property — the claims were against the *individual members* of the firm. The creditors of the latter cannot touch the property until the creditors of the firm are paid. That the receiptors have a right to show that the property attached, and receipted for, did not belong to the debtor, he cited the following authorities, *viz* : *Larned v. Bryant,* 13 *Mass.* 224 ; *Fisher v. Bartlett,* 8 *Greenl.* 122 ; *Peirce v. Jackson,* 6 *Mass.* 242 ; *Rice v. Austin,* 17 *Mass.* 197 ; 16 *Johns. Rep.* 102 ; *The Commercial Bank v. Wilkins,* 9 *Greenl.*

If the logs were not liable to attachment as the property of *the debtors* on account of the partnership, then the defendants as receiptors ought not to be holden, their liabilities in this respect being commensurate.

The defendants have a right to retain the $125, to pay their claims against the individual members of the firm, because all the company so in writing agreed.

But if otherwise, then the defendants contend that the trustee suit has arrested the amount in their hands, the plaintiff in that suit being a creditor of the firm. *Locke v. Tippets,* 7 *Mass.* 149 ; *Foster v. Jones,* 15 *Mass.* 185 ; *Maine stat. ch. sec.* 11.

*Sprague* and *Rogers,* for the plaintiff.

The defendants have received certain property of the plaintiffs. Their obligation results from this fact, and is not therefore affected by any misrecital of the parties in the receipt.

But if otherwise, still, so long as the property remained in the hands of the receiptors, the plaintiff could attach it on other writs. And this the case finds. The naming of the action or parties in the receipt is not directory as to the mode in which it is to be appropriated, but is merely descriptive. The receiptor is the mere bailee of the officer, and has nothing to do with his duties in regard to the disposal of the property attached. *Whittier v. Smith,* 11 *Mass.* 201.

The defendants are liable on their receipt unless they can show that the creditor has had the property or its effects. *Webster v. Coffin,* 14 *Mass.* 196.

The principle invoked to the aid of the defendants, that re-

ceiptors may show that the property attached did not belong to the debtors, has no pertinency to this case. Here the property was the property of the debtors, and so both they and the defendants say in their agreement. At all events no one but a creditor of the firm has a right to say the contrary.

The courts have never decided that the company property cannot be attached for the debts of one of the members; but merely that it is *first* liable to the payment of the partnership debts.

The defendants set up a conveyance of the company property not only to pay partnership debts, but the debts of the individual members of the firm. Now if it cannot thus be attached, neither can it thus be conveyed.

The fact of the solvency or insolvency of the company cannot affect the defendants, nor can they avail themselves of it. It is entirely immaterial to them. But it is contended that *Moses Babcock* never was a member of the company. The contract between him and *James Babcock*, was a mere sub-contract. *James* had no power to admit *Moses* into the partnership, and the latter was not recognized by the others as a member of the firm — at all events not until after *Roberts'* attachment, and then for the purpose of defeating his claims. Under these circumstances he cannot be considered a partner. *Barstow v. Gray,* 3 *Greenl.* 409.

But is this defence open to the defendants? It is denied that they can set up a pre-existing claim of their own against the debtors. But even if they had a prior claim upon it, or preference in law, yet by taking it from the officer and giving their receipt for it, they thereby waived their pre-existing right.

They surely have no right to set up their claims against the individual members of the firm, for here we are prior in point of time, and priority in time, in this respect, gives priority in right.

The plaintiff's right to recover ought not to be affected by the trustee suit. The defendants are not debtors of *Babcock & Co.* and cannot therefore be held in that suit. There was no privity of contract between them. As bailees of the *plaintiff,* they cannot be held as the trustees of the original debtors —

they are mere servants *to him*, and cannot even maintain tres-
pass for any injury done to the property. — Again, that process
ought not to be effectually interposed because it comes after *is-
sue joined. Howell v. Freeman, 3 Mass.* 121 ; *Kyd v. Shep-
pard, 4 Mass.* 238.

The agreement in writing cannot affect the contract upon
which this action is founded. It is prior to the receipt. It
merely grants the liberty for the plaintiff to deliver the property
to the defendants — he was not obliged so to do — it was at
his option, and upon such terms as he should think safe. Ac-
cordingly he took a *receipt, by the terms of* which the defend-
ants are now bound to re-deliver it.

*Allen,* in reply.

The judgments rendered in the suits in which the logs were
attached have been satisfied. We deny that there is any mis-
take in the receipt. The actions recited in the receipt were
pending at the time. The attempt of the defendants is not
merely to *amend* the receipt, but to *enlarge* it, which it is not
competent for them to do.

But if the receipt is broad enough in its terms to embrace
all the actions, still there is a good defence to this suit. The
property was not liable to attachment by creditors of individual
members of the firm, until the partnership debts were paid —
and the case finds that they were *insolvent.*

The defendants are not mere receiptors, but they have claims
on the property by virtue of the *agreement,* by which the pro-
perty was all appropriated. But it is said, this cannot be done,
for what cannot be *attached* cannot be *sold.* This is a *non
sequitur.* For though furniture, cows, &c. be exempt from
*attachment,* yet surely they may be sold by the debtor for the
payment of his debts or for any other purpose.

But it is contended further, that the trustee suit furnishes a
perfect defence to this action. The objection, that the trustee
process cannot be maintained *after issue joined,* is of no force,
because now there is no necessity for pleading any thing spe-
cially, every thing may be given in evidence under the general
issue.

*Moses Babcock* was a member of the firm. He was to participate in the profit and loss, which the other members *assented* to, and he thereby became a member of the firm. In the case of *Barstow v. Gray*, it was decided merely that, a silent partner may not necessarily be joined as plaintiff.

MELLEN C. J. delivered the opinion of the Court.

It appears by the report of the Judge, that before any of the attachments of the logs therein mentioned were made, the firm of *James Babcock & Co.* was insolvent. That several of those attachments were made at the suit of creditors *to the firm;* and several at the suit of creditors of *individual members* of the firm. It further appears by the agreement of *June* 13th, 1826, made and signed by all the members of the firm, by the defendants and by the plaintiff, who was the attaching officer, that the logs above-mentioned were placed in the hands of the defendants for the purposes particularly specified in that agreement; and that after payment by them of the debts due to the attaching creditors of the firm, a balance of $125, remained in their hands, which they claimed a right to retain to satisfy certain demands which they had against some of the *individual members* of the firm, in virtue of the terms and special provisions of said agreement; but the verdict was returned in favour of the plaintiff for said sum of $125 and interest; the whole amounting to $161, 87. We are well satisfied that if the plaintiff can by law maintain this action, he is entitled to recover neither more nor less than the amount mentioned in the verdict.

The disclosure of the defendants, made in the action of *Isaac Smith* against them as trustees of *James Babcock & Co.*, and which is referred to in the report as a part of the report, if competent evidence, certainly is not competent to establish facts, except as against the plaintiff in *that action;* but they cannot derive facts from *that* case, and use them in the *present* action as evidence, merely because they constitute a part of their disclosure. But *the action* of *Isaac Smith* against them as trustees, and the *disclosure*, both of which are referred to, are legal evidence of the claim of *Isaac Smith* as a creditor of *the firm*

of *James Babcock & Co.* and of his pursuit of legal measures for the purpose of obtaining satisfaction of his demand out of the *company funds*, which he has caused to be attached and bound by the service of the process, provided there are any in the hands and possession of the defendants on which a legal *lien* can operate in his favour. — As the *firm* of *James Babcock & Co.* were insolvent before any of the attachments were made, it is perfectly clear, as a general principle of law, that the *company debts* must be paid out of the *company funds*. before creditors of the *individual members* of the company can be permitted to apply any part of those funds in payment of *their* demands: On this point, and in support of this principle, in its application in various circumstances, we refer to the case of the *Commercial Bank v. Wilkins*, lately decided in this county, but not yet reported, and to the numerous cases there cited and commented upon by the Court. The question principally requiring our consideration is, whether there are any peculiarities in the present case which relieve it, in respect to the plaintiff, from the influence and control of the *general principle* above stated; for, if not, we do not perceive on what grounds he can be entitled to retain the verdict.

Several objections have been urged on the part of the plaintiff against the prevalence of the motion for a nonsuit for the reasons stated in the report. In the *first* place it has been said, that *Moses Babcock*, at the time of the attachments, was not one of the firm of *James Babcock & Co.* It appears that *James* made a contract with him, before the attachments were made, by which *Moses* became equally interested with him; and, if one of a firm cannot introduce a new partner without the consent of the *other* partners, still they may afterwards assent to it; and in the present case this was done; for, in the agreement of *June* 13th, 1826, all four of the persons are named and described as composing the firm of *James Babcock & Co.* Besides, *all* the attachments made in suits against the firm, would be liable to the same objection. Again, it has been objected that as the trustee process was not commenced until after the present action had once been tried in this Court, and, of course, after issue had been joined, it can have no legal influ-

Smith *v.* Barker & al.

ence in the decision of this cause, or even be regarded by the Court ; and the cases of *Howell v. Freeman and trustee,* and *Kidd v. Sheppard and trustee,* have been cited in support of the position.  In the former case, the process was not served on the trustee until after a report of referees was made, in an action against him by *Freeman,* the principal, which was agreed to be final, and the report was against the alleged trustee.  In these circumstances the trustee process was not sustained.  In the latter case, the writ was served on the trustee while the action of the principal was pending against him and *before* verdict ; but he did not attempt to guard against it until *after the verdict was returned ;* and he then moved for a stay of execution, but the motion was denied.  The language of *Parsons C. J.* that a trustee process came too late, if served after *issue joined,* in a direct action by the principal against the trustee, was not called for by the facts in either of the before mentioned cases, and could have had no influence in the decision ; nor can we perceive why that circumstance should form a criterion. It is an event which settles no rights and imposes no *legal* liabilities.  In the present case, the process was served long before the last trial, and, according to the course of practice, the defendants might have moved for leave to amend their plea and obtained it, and thus availed themselves of the commencement and pendency of the trustee process.  Whether the pleadings were amended as above or not, does not appear by the report : but it does appear that the disclosure of the defendants was made at *Oct.* term, 1831, and that the present action was tried at the last *October* term, 1832 ; and in the report before us, the disclosure composes a part of the report, so far as the same is competent evidence ; and in the argument, there was no intimation against its competency as being inadmissible on account of the state of the pleadings.  Indeed, both actions are brought before us in such a manner that we may at once settle the rights of all concerned ; and such seems evidently to have been the intention. — Again it has been urged that, the above-mentioned balance of $125, being a part of the proceeds of the logs attached, was under attachment in the hands of the defendants, as the agents of the plaintiff who attached them, and therefore

could not be the subject of a trustee process, any more than they would have been in the hands of the plaintiff himself. The answer to this objection is, that the company being deeply insolvent, the *individuals* of the firm had no property in the *company funds* till the *company debts* were paid ; and consequently the attachment of the logs in the suits against *certain members* of the firm, was inoperative as against *Isaac Smith*, who was a creditor of the firm. For the law is settled, that property which cannot be *seised on execution*, cannot be *attached* on the *mesne process*. *Commercial Bank v. Wilkins*, and cases there cited. There was nothing, then, to prevent the effectual arrest of the above balance of the company funds, by means of *Isaac Smith's* trustee process. This answer is also an answer to the objection as to the *time* when the trustee process was served ; because the balance could not be lawfully applied to satisfy executions against certain individual members of the firm. The action cannot be maintained, a nonsuit must be entered, but no costs can be allowed to the defendants.

